IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEX LESTER VARGAS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   20-cv-5927 |
| | : | |
| **KILOLO KIJAKAZI,**[1] | : | |
| **Acting Commissioner of Social Security,** | : | |
| Defendant. | | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                          **August 4, 2022**

Plaintiff, Alex Lester Vargas, filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this opinion.

### I.     PROCEDURAL HISTORY

Plaintiff's mother protectively filed an application for SSI on his behalf on April 26, 2018.  (R. 13).  Plaintiff's application was initially denied on September 13, 2018, and he requested a hearing before an Administrative Law Judge (ALJ).  *Id.*  The hearing occurred on December 9, 2019.  *Id.*  Plaintiff, represented by counsel, appeared and testified at the hearing, as

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for Andrew Saul as the Defendant in this case.

did an impartial vocational expert (VE).  *Id*.; R. 42–70.  On March 30, 2020, the ALJ issued a decision denying benefits under the Act.  (R. 10–41).  Plaintiff requested review of the decision, and the Appeals Council denied his request on October 22, 2020.  (R. 1–6).  This makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a Complaint in this Court on November 25, 2020.  (Compl., ECF No. 1).  On the same date, the parties consented to my jurisdiction in this matter.  (Consent, ECF No. 4).  On September 27, 2021, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 19).  On October 26, 2021, the Commissioner filed a Response (Resp., ECF No. 20), and on November 2, 2021, Plaintiff filed a Reply (Reply, ECF No. 23).

II.   **FACTUAL BACKGROUND**

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on March 1, 2001, making him seventeen years old on the date the application was filed.  (R. 18).  On February 28, 2019, Plaintiff attained age eighteen[2] and entered the "younger individual age eighteen to forty-four" category.  *Id.*; R. 34.  Plaintiff has a limited education, and at the time of the administrative hearing was still completing his high school education.  (R. 34, 52).  He has no past relevant work.  (R. 34).  Plaintiff alleges disability due to generalized anxiety disorder, unspecified depressive disorder, autism spectrum disorder, attention deficit hyperactivity disorder (ADHD), and obesity.  (R. 18).

---

[2] Under the Social Security regulations, a person attains a given age on the day before his corresponding birthday.  20 C.F.R. § 404.2(c)(4).

### A.     Medical Evidence

Plaintiff was diagnosed with Asperger's disorder when he was in third grade; that diagnosis later changed to one of autism spectrum disorder. (R. 586). While attending elementary school, Plaintiff participated in outpatient therapy with Philmont Guidance Center, primarily treating his depression and anxiety. *Id.* On one occasion, Plaintiff was hospitalized for two weeks after refusing to attend school due to depression and low self-esteem. *Id.*

#### 1.     Treating Psychiatrist Dr. Maria Pena-Ariet

On February 1, 2016, Dr. Maria Pena-Ariet, a treating psychiatrist at Foundations Behavioral Health, completed a Report of Physical/Mental Examination of Plaintiff. (R. 325–28). Dr. Pena-Ariet diagnosed Plaintiff with generalized anxiety disorder and autism spectrum disorder. (R. 325). Regarding Plaintiff's functional limitations, Dr. Pena-Ariet wrote that Plaintiff attends school two-thirds of the time on average, has minimal social functioning, becomes overwhelmed when with peers, and engages in odd behaviors such as growling. *Id.* Dr. Pena-Ariet noted that Plaintiff had abnormalities of behavior and appearance, showed evidence of poor comprehension or confusion, and had abnormal emotional reactions, and further specified that Plaintiff engaged in behaviors such as growling or making other noises, covering his face, curling up in a ball, and whispering when upset or anxious. (R. 328). On exam, Dr. Pena-Ariet found Plaintiff to be oriented for time, place, and person, and had no memory defects for recent events. *Id.* In summarizing Plaintiff's condition, Dr. Pena-Ariet found it medically necessary for Plaintiff to have a behavior specialist complete a behavioral evaluation and develop a plan to assist in managing his behaviors. *Id.* She also found that Plaintiff requires behavioral health rehabilitative services to prevent further decompensation. *Id.*

### 2. Consultative Examiner Dr. Michael Schuman

On August 29, 2018, consultative examiner Dr. Michael Schuman conducted a Child Mental Status and Intelligence Evaluation of Plaintiff. (R. 472–77). On examination, Plaintiff was cooperative, and his manner of relating was fair. (R. 474). His personal hygiene and grooming were poor, and his motor behavior was lethargic. *Id.* Plaintiff's speech was fluent, and his language skills were age-appropriate. *Id.* His thought processes were coherent and goal-directed, his affect was flat, and his mood was neutral. *Id.* His attention and concentration were intact, as were his recent and remote memory skills. *Id.* Dr. Schuman found Plaintiff's cognitive functioning to be below average, and his insight and judgment were poor. (R. 475).

Dr. Schuman administered the Wechsler Adult Intelligence Scale test to Plaintiff and found that he had a full-scale IQ of 89, a verbal comprehension index of 98, a perceptual reading index of 107, a working memory index of 77, and a processing speed index of 71. *Id.*

Dr. Schuman also completed a Childhood Mental/Psychological Source Statement of Plaintiff's Functional Abilities. (R. 478–81). Regarding acquiring and using information, Dr. Schuman opined that Plaintiff had mild problems learning, but no problems in language or directions. (R. 478). Dr. Schuman found Plaintiff had no problems attending and completing tasks, moving about and manipulating objects, or health and physical well-being. (R. 479, 480, 481). He found Plaintiff had moderate difficulties relating to and connecting with others, but noted that Plaintiff spoke intelligibly and fluently. (R. 479). Regarding caring for himself, Dr. Schuman found Plaintiff had mild or moderate difficulties in emotional regulation. (R. 480).

### 3. State Agency Reviewer John Gavazzi

On September 7, 2018, state agency reviewing psychologist John Gavazzi opined on Plaintiff's Child Medically Determinable Impairments. (R. 76–78). Gavazzi found that Plaintiff

had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. (R. 77). He found Plaintiff had no limitations in moving about and manipulating objects or in his health and physical well-being. *Id.*

### 4. Treating Psychiatrist Dr. Candice Ritch-Hood

Plaintiff treated with Progressions Behavioral Health from approximately 2017 through 2019. (R. 584–652, 701–755). On January 4, 2019, Dr. Candice Ritch-Hood conducted an evaluation of Plaintiff for the purpose of recommending behavioral interventions and psychosocial services and supports. (R. 585). On mental status exam, Plaintiff was appropriately groomed and displayed speech and language within normal limits for his age. (R. 592). His mood was positive and euthymic with full range affect, although he reported that at times he felt irritable and depressed. *Id.* Plaintiff's attention and concentration were within normal limits, and his intelligence was estimated to be average, although Dr. Ritch-Hood did not conduct any structured assessment. *Id.* Plaintiff's memory, judgment, and insight were fair. *Id.* After evaluating Plaintiff, Dr. Ritch-Hood wrote that Plaintiff requires treatment to address his mood symptoms of depression and anxiety, and that he needs support to learn effective coping skills, improve his social skills, and learn to self-regulate so he can focus on non-preferred tasks. (R. 594). Dr. Ritch-Hood also wrote that Plaintiff's BMI was in the 98th percentile, and that his obesity was likely to cause him health-related problems. (R. 591).

### B. Non-Medical Evidence

The record also contains non-medical evidence. On April 30, 2018, Plaintiff's mother completed a Function Report – Child Age 12 to 18th Birthday form on Plaintiff's behalf. (R. 205–12). Plaintiff's mother reported that Plaintiff's ability to communicate is limited, and that

5

he does not answer the telephone and make phone calls, deliver phone messages, tell jokes or riddles accurately, explain why he did something, ask for what he needs, or talk with friends. (R. 208). Plaintiff's mother also reported that Plaintiff could not understand, carry out, and remember simple instructions. (R. 209). Regarding social activities, Plaintiff's mother reported that he did not have friends his own age, could not make new friends, and did not play any team sports, but that he could get along with adults and schoolteachers. (R. 210). Plaintiff's mother reported that he could wash his clothes, cook for himself, take medication, keep out of trouble, avoid accidents, and ask for help when needed, but that he could not take care of his personal hygiene, help around the house, get to school on time, study or do homework, use public transportation by himself, accept criticism, or obey rules. (R. 211). She reported that Plaintiff could concentrate on arts and crafts projects, but could not keep busy on his own, finish things he started, complete homework on time, or complete chores. (R. 212).

Plaintiff also testified at the administrative hearing. (R. 42–70). Plaintiff testified that he lived with his grandparents and his mother and attended online high school, although he was still in tenth grade despite being eighteen years old due to a "work ethic issue." (R. 52, 56). Plaintiff stated that he is "upset" by loud noises, yelling, and crowds, and testified that becomes upset when being corrected. (R. 54). When upset by a situation, Plaintiff stated that he would react by walking away or trying to "escape it." (R. 55–56). Plaintiff testified that he usually spends his day doing schoolwork or playing video games, and that he does not have any friends besides those he's made through gaming. (R. 56). Plaintiff stated that he prepares his own meals, does some chores, and helps his grandmother around the house. (R. 58).

Plaintiff's mother also testified at the hearing. (R. 60–63). She testified that Plaintiff is upset by loud noises and crowds, and that he would become distressed in the cafeteria of his

6

previous school and would need to go somewhere quiet. (R. 60). She stated that Plaintiff also becomes upset when he is called out or criticized, and will disconnect from his online classes several times a week as a result of this. *Id.* Regarding Plaintiff's schoolwork, Plaintiff's mother testified that his grades from the previous year were not good, and that he had trouble participating in class and was missing schoolwork. (R. 61). She testified that Plaintiff requires guidance in completing his homework, and stated that she helps him every day with doing his work, taking his medication, and getting dressed and brushing his teeth. (R. 62).

## III. LEGAL STANDARD

### A. Child Standard

Under the Social Security Act, the SSA must apply a three-step sequential evaluation process to determine if a child under the age of eighteen is disabled. 20 C.F.R. § 416.924(a). A child under eighteen is eligible for SSI benefits only if: (1) he is not performing substantial gainful activity; (2) he has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924.

If the child's impairment does not medically meet a listing, the examiner must determine whether the impairment functionally equals a listing. An impairment of combination of impairments functionally equals a listed impairment if it causes a "marked" limitation in two of six domains of functioning or an "extreme" limitation in one of those six domains. 20 C.F.R. § 416.926(a). [3] The six domains are: (1) acquiring and using information, (2) attending and

---

[3] A "marked" limitation "interferes seriously with [the child's] ability to independently

completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

    **B.**    **Adult Standard**

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520.  The claimant bears the burden of establishing steps one through four, and then the burden shifts to the Commissioner at step five to establish that the claimant is capable of performing other jobs in the

---

initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).

national economy, in light of his age, education, work experience and residual functional capacity.[4] *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.  ALJ'S DECISION

In his decision, the ALJ used both the three-step child disability analysis and the five-step adult disability analysis. He made the following findings:

1. The claimant was born on March 1, 2001 and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on April 26, 2018, the date the application was filed. The claimant attained age 18 on February 28, 2019.

2. The claimant has not engaged in substantial gainful activity since the date the application was filed.

3. Before attaining age 18, the claimant had the following severe impairments:

---

[4] Residual functional capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by [his impairments]." 20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

        generalized anxiety disorder; unspecified depressive disorder; autism spectrum disorder; and attention deficit hyperactivity disorder.

4. Before attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Part A or B.

5. Before attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the listings.

6. Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to attaining age 18.

7. The claimant has not developed any new impairment or impairments since attaining age 18.

8. Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments.

9. Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment.

10. After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine tasks; he can tolerate occasional contact with supervisors and coworkers; he cannot tolerate contact with the general public; he cannot perform tandem work; he can tolerate a work environment with no more than minimal change; and he can tolerate a work

> environment with no more than a moderate noise level.

11. The claimant has no past relevant work.

12. The claimant is currently a "younger individual age 18–44."

13. The claimant has a limited education and is able to communicate in English.

14. Transferability of job skills is not an issue because the claimant does not have past relevant work.

15. Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant has been able to perform.

16. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2019, the day the claimant attained age 18, through the date of this decision.

(R. 18–35). Accordingly, the ALJ found Plaintiff was not disabled.

## V.     DISCUSSION

Plaintiff raises two claims in his request for remand: (1) the ALJ erred by failing to consider the medical opinions of Dr. Maria Pena-Ariet and Dr. Candice Ritch-Hood; and (2) the appointment of the Commissioner of SSA violates separation of powers, and therefore the decision in this case is constitutionally defective. (Pl.'s Br., ECF No. 19, at 2, 4). In response to the first claim, the Commissioner argues that the evidence from Drs. Pena-Ariet and Ritch-Hood does not constitute medical opinion evidence as defined by the regulations. (Resp., ECF No. 20, at 5–8). In response to the second claim, the Commissioner agrees that 42 U.S.C. § 902(a)(3) violates separation of powers, but asserts that this conclusion does not support setting aside the

disability determination in this case. *Id.* at 9–21. I address each of Plaintiff's arguments in turn.

### A. Failure to Consider Medical Evidence

First, Plaintiff argues that the ALJ erred by failing to consider medical evidence from psychiatrist Dr. Pena-Ariet and psychologist Dr. Ritch-Hood as part of his disability analysis. (Pl.'s Br., ECF No. 19, at 2–4). Plaintiff argues that the ALJ violated Social Security regulations by ignoring Dr. Pena-Ariet and Dr. Ritch-Hood's medical opinions, and remand for further evaluation of these opinions is required. *Id.* In response, the Commissioner argues that the evidence from Dr. Pena-Ariet and Dr. Ritch-Hood is not medical opinion evidence, and therefore the ALJ did not err by failing to explicitly address it. (Resp., ECF No. 20, at 5–8). Additionally, the Commissioner argues that Dr. Pena-Ariet's evaluation predates the relevant period, and therefore the ALJ was not required to address it. *Id*. at 5–6.

On March 27, 2017, the Social Security Administration published revisions to its rules regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the ALJ will not give specific evidentiary weight, including controlling weight, to any medical opinions, even from a claimant's treating physician(s). *Id.* at § 404.1520c(a). Rather, the ALJ must evaluate the persuasiveness of the source using a number of factors, the most important of which being supportability and consistency. *Id.* at (b)(2). An ALJ may, but is not required to, explain how he considered the source's relationship with the claimant, whether the source is a specialist, and/or other factors. *Id.* at (c)(3)-(5).

Here, Dr. Pena-Ariet completed a Report of Physical/Mental Examination of Plaintiff, wherein she documented abnormalities of behavior and appearance and recommended that

Plaintiff see a behavioral specialist. (R. 325–28). Dr. Ritch-Hood similarly conducted a mental status examination of Plaintiff, during which she documented his mood, attention, concentration, memory, judgment, and insight. (R. 584–652). The ALJ did not explicitly address either of these evaluations in his analysis of the medical opinion evidence.

      First, contrary to Plaintiff's assertions, Dr. Ritch-Hood's examination does not constitute a medical opinion for the purposes of the disability analysis. Under the applicable regulations, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 416.913(a)(2). Medical opinions in child claims focus on a claimant's abilities in the six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416(a)(2)(ii)(A–F). For an adult claim, medical opinions focus on a claimant's limitations and restrictions in performing the physical and mental demands of work activities. 20 C.F.R. § 416(a)(2)(i)(A–D). This is different from "objective medical evidence," which includes "medical signs, laboratory findings, or both;" examples of psychiatric signs include "medically demonstrable … abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 416.913(a)(1); § 416.902(k).

      In this case, Dr. Ritch-Hood's evaluation constitutes objective medical evidence rather than medical opinion evidence. Dr. Ritch-Hood conducted a mental examination of Plaintiff, and made observations about his mood, attention, judgment, etc., but did not opine on any of his functional limitations. (R. 584 –652). Because Dr. Ritch-Hood did not consider Plaintiff's functional limitations, or whether his impairments impacted his abilities in any of the six areas of functioning relevant to a child disability claim, her evaluation of Plaintiff does not meet the

definition of a medical opinion under the Social Security regulations. Therefore, the ALJ did not err by failing to address it as such.

However, this Court is not fully persuaded by the Commissioner's assertion that Dr. Pena-Ariet's evaluation similarly consists of only objective medical evidence and does not contain a medical opinion. Dr. Pena-Ariet wrote under a heading titled "functional limitations" that Plaintiff was attending school two-thirds of the time on average, had minimal social functioning, felt overwhelmed when with peers, and engaged in odd behaviors such as growling. (R. 325). Additionally, Dr. Pena-Ariet wrote that she found Plaintiff to be "incapacitated" in response to a question that specifically asked her opinion of Plaintiff's ability to work. *Id.* While Dr. Pena-Ariet did not explicitly address the six areas of functioning necessary for a child disability claim, her opinion that Plaintiff could only attend school two-thirds of the time and had minimal social functioning illustrates his difficulties interacting and relating with others, which is one of the six areas. Dr. Pena-Ariet also clearly opined that Plaintiff's impairments make him incapable of performing the physical and mental demands of work activities.

The Commissioner argues that, because Dr. Pena–Ariet's assessment predates the relevant period for Plaintiff's SSI claim by over two years, the ALJ was not required to consider it. (Resp., ECF No. 20, at 5–6). The Third Circuit has held that the ALJ is not obligated to consider medical records dating back to a time when disability would not have been paid. *Miller v. Comm'r of Soc. Sec.*, 719 Fed.Appx. 130, 133 (3d Cir. 2017). However, as courts outside this circuit have noted, this does not relieve the ALJ of their responsibility under the regulations to consider all medical *opinions* in the record. *See Williams v. Astrue*, 493 Fed.Appx. 866, 868–69 (9th Cir. 2012) ("[I]t is clear from … the Social Security Regulations that 'the ALJ must consider all medical opinion evidence.'") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

Cir. 2008), 20 C.F.R. § 404.1527(b)); *Valarie Jay O. v. Comm'r of Soc. Sec.*, 2021 WL 5238779, at *4 (E.D. Wash. 2021) ("[The Commissioner's] explanation that the relevant period began when Plaintiff filed her application for SSI … does not overcome the requirement that the ALJ state a valid reason for rejecting medical opinions."); *Pugh v. Comm'r of Soc. Sec.*, 351 F.Supp.3d 305, 315 (W.D.N.Y. 2018) (finding ALJ erred by rejecting medical opinions on the sole basis that they predated the relevant period of disability). As a result, the ALJ's failure to address Dr. Pena-Ariet's opinion constitutes error despite the fact that the opinion predates the relevant time period for Plaintiff's claim.

While the Commissioner argues that the ALJ's error here was harmless, the ALJ's total failure to discuss or even mention this medical source statement nonetheless "makes it impossible for us to review [his decision], for we cannot tell if significant probative evidence was not credited or simply ignored." *Fargnoli*, 247 F.3d at 42 (citations omitted); *Batista*, 2011 WL 1044923, at *6 (advising that when a court "cannot determine if relevant unmentioned evidence was dismissed as not credible or simply ignored during review, a remand is appropriate"). Accordingly, explicit consideration of Dr. Pena-Ariet's opinion evidence is necessary to facilitate judicial review. *See Gross v. Comm'r Soc. Sec.*, No. 15-2764, 2016 WL 3553259, at *4 (3d Cir. June 30, 2016); *Edwards v. Colvin*, No. 14-4235, 2015 WL 4545391, at *3–5 (E.D. Pa. July 28, 2015) (remand necessary where the ALJ analysis fails to sufficiently justify the rejection of physician opinion and thus, court without necessary information to determine whether ALJ decision supported by substantial evidence).

Because the ALJ failed to address Dr. Pena-Ariet's medical opinion, I remand on this basis.

### B.     Separation of Powers Argument

In his second claim in support of his request for review, Plaintiff argues that SSA's decision to deny him benefits was constitutionally defective because the ALJ and Appeals Council derive their authority from Commissioner Andrew Saul, whose appointment as a single commissioner of SSA removable only for cause violates the separation of powers. (Pl.'s Br., ECF No. 19, at 2, 4). I find that remand on this basis is not warranted.

Plaintiff bases his argument on *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). In that case, the United States Supreme Court found that a violation of the constitutional separation of powers occurs when an executive agency is led by a single head who serves for a longer term than the president and can only be removed from that position for cause. *Id.* The Commissioner agrees that the relevant provision of the Social Security Act, 42 § U.S.C. § 902(a)(3), violates the separation of powers to the extent that it limits the President's authority to remove the Commissioner without cause. (Resp., ECF No. 20, at 9). However, the Commissioner argues that this alone does not support setting aside Plaintiff's unfavorable disability determination because Plaintiff cannot show that the restriction actually caused him harm. *Id.*

In 2021, the Supreme Court clarified its holding in *Seila* in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). In *Collins*, the court held that an unconstitutional removal provision does not automatically render all actions taken by individuals subject to that provision void. *Id.* at 1787. The court explained:

> Although the statute unconstitutionally limited the President's authority to *remove* the [individual], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] as void.

*Id.* (emphasis in original). However, the court also found that "it is still possible for an

unconstitutional provision to inflict compensable harm." *Id.* at 1789.  In such a case, the plaintiff must show that the removal restriction was the cause of the harm he suffered.  *Id.*  In the context of Social Security appeals, "*Collins* requires [the plaintiff] to demonstrate a nexus between the decision denying [his] disability benefits and 42 U.S.C. § 902(a)(3)." *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *7 (E.D. Pa. 2022).

Notably, post-*Collins,* all of the courts in this Circuit that have considered such separation of powers arguments as the one raised here by Plaintiff have agreed, citing *Collins*, that they do not warrant remand.  *See, e.g.  Andino*, 2022 WL 1135010; *Adams v. Kijakazi*, No. 20-3591, 2022 WL 767806 at **9-11 (E.D. Pa. 2022); *High v. Kijakazi*, No. 20-3528, 2022 WL 394750 at *6 (E.D. Pa. 2022); *Wicker v. Kijakazi*, No. 20-4771, 2022 WL 267896 at **8-10 (E.D. Pa. 2022); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510 (D.N.J. 2022); *Crossley v. Kijakazi*, No. 20-2298, 2021 WL 6197783 at *8 (M.D. Pa. 2021).  Courts in other Circuits have also reached the same conclusion.  *See, e.g. Shannon R. v. Commissioner of Social Security*, 2021 WL 5371394 at **7-9 (W.D. Washington 2021); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141 at *18 (D. Neb. 2021); *Webb v. Kijakazi*, No. 1:20CV714, 2021 WL 5206498 at *15 at n. 12 (M.D.N.C. 2021) (Report and Recommendation); *Lisa Y. v. Commissioner of Social Security*, No. C21-5207 BAT, 2021 WL 5177363 at *8 (W.D. Wash. 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397 at **2-3 (W.D.N.C. 2021); *Tracey Ann. P. v. Kijakazi*, No. 20CV1163-LAB(RBB), 2021 WL 4993021 at *18 (S.D. Cal. 2021) (Report and Recommendation); *Robles v. Commissioner of Social Security*, No. 220CV01069JDPSS, 2021 WL 4285170 at *4, n. 6 (E.D. Cal. 2021); *Angelita O. v. Kijakazi*, No. 1:20-CV-00034-AJB, 2021 WL 4146085 at *18 at n. 13 (N.D. Ga. 2021).

Plaintiff points to several cases from other jurisdictions where courts have rejected

12(b)(6) motions to dismiss Social Security cases based on *Seila Law*. *See Sylvia A. v. Kijakazi*, No. 5:21-CV-M-BQ, 2021 WL 4692293 at *3 (N.D. Tex. 2021), *report and recommendation adopted* 2021 WL 4622528 (N.D. Tex. 2021); *Tafoya v. Kijakazi*, No. 21-CV-00871-REB, 2021 WL 3269640 at *5 (D. Colo. 2021); *Dante v. Saul*, No. CV 20-0702 KBM, 2021 WL 2936576 at *8 (D.N.M. 2021). In these cases, the courts found that the plaintiffs did have standing to challenge unfavorable decisions on the basis of the unconstitutional removal provision. However, as the court noted in *Andino*, "Justice Alito specified in *Collins* that *Seila Law*'s holding on standing 'does not mean that actions taken by such an officer are void *ab initio* and must be undone.' Thus, these cases do not relieve a claimant of showing harm connected to the unconstitutional removal provision." 2022 WL 1135010, at *6.

Here, Plaintiff has not shown a nexus between the decision denying his disability benefits and 42 U.S.C. § 902(a)(3). Plaintiff argues that the ALJ and Appeals Council could not have issued the adverse determination in his case but for the Commissioner's unlawful delegation of authority to them. (Reply, ECF No. 23, at 14). However, the mere delegation of authority by the Commissioner does not constitute a sufficient nexus to satisfy the requirements of *Collins* or *Seila Law*. In *Collins*, the injury suffered by the plaintiffs was directly traceable to an amendment adopted by the directors of the Federal Housing Finance Agency (FHFA) that materially changed the nature of certain financial agreements. 141 S. Ct. at 1774, 1779. As a result, the plaintiffs in *Collins* had "an identifiable basis to contend that but for the unconstitutional removal provision, the President may have removed and appointed a different Director who would have disapproved of the adoption (or implementation) of the [amendment.]" *Lisa Y. v. Comm'r of Soc. Sec.*, No. C21-5207, 2021 WL 5177363, at *7 (W.D. Wash. 2021).

Here, it is not enough for Plaintiff to trace his injury to the Commissioner's ability to

delegate power to the ALJs and Appeals Council in general; rather, he must be able to trace that injury to the actual unlawful conduct in this matter, which is the unconstitutional removal clause. *See Wicker*, 2022 WL 267896, at *10 (citing *Collins*, 141 S. Ct. at 1779).  Unlike the FHFA Director in *Collins*, Commissioner Saul did not promulgate a new action affecting or injuring Plaintiff, and there is nothing to indicate that but for the unconstitutional removal clause the President would have removed Commissioner Saul and appointed a new Commissioner who would have decided Plaintiff's disability claim differently.  *See id.* (finding Commissioner's delegation of authority to ALJs and Appeals Council did not constitute sufficient nexus to demonstrate standing under *Collins*).  As a result, Plaintiff has failed to show that the unconstitutional removal clause caused him harm.

Accordingly, remand on this ground is not warranted.  However, because the ALJ failed to consider Dr. Pena-Ariet's medical opinion, Plaintiff's request for review is granted.

## VI.   CONCLUSION

For the reasons set forth above, I find that the ALJ erred in failing to consider the medical opinion of Dr. Pena-Ariet.  Accordingly, Plaintiff's request for review is **GRANTED**, and the matter is remanded for proceedings consistent with this opinion.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge